UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CASE NO. 2:25CR175 |
| Plaintiff, | : | JUDGE Marbley |
| v. | : | INDICTMENT |
| | : | |
| KLAUDIO PALI and | : | 18 U.S.C. § 2 |
| ATHIE BENEVENUTO, | : | 18 U.S.C. § 1343 |
| | : | 18 U.S.C. § 1349 |
| Defendants. | : | |

**THE GRAND JURY CHARGES THAT:**

### INTRODUCTION

At all times relevant to this Indictment:

1. DEFENDANT KLAUDIO PALI (DEFENDANT PALI), was the owner and CEO of Direct Communications Sale, LLC (DCS) located at 3369-71 Indianola Avenue, Columbus, Ohio 43214.

2. DEFENDANT ATHIE BENEVENUTO (DEFENDANT BENEVENUTO) was a sales representative for AlarmGuard Security Services (AlarmGuard) which had its corporate headquarters in Toronto, Canada, but conducted business in Florida.

3. DCS and Alarm Guard were independent dealers of ADT, Inc (ADT) responsible for acquiring ADT security system customers and installing ADT home security systems.

4. ADT was a public security and smart home solutions company headquartered in Boca Raton, Florida. ADT relied, in part, on independent dealers to obtain customers and install ADT security panels.

5. ADT provided commercial and residential security system protection with branch offices located throughout the United States. ADT security systems operated by using a network of sensors, a central control panel, and a monitoring center to detect and respond to security breaches, with the system communicating with ADT via phone lines or cellular connection. ADT security systems utilized various sensors, including door/window sensors, motion detectors, glass break motion detectors and glass break sensors, to detect potential security threats. ADT also used control panels to act as central hubs to receive signals from the installed sensors and manage the systems operations. Each active account had its own control panel with a unique identification number. Within the control panel was a separate module that also contained a unique identification number.

6. Equifax was an American multinational consumer credit reporting agency and data analytics company that collected and provided information on consumers and businesses to help lenders and others assess credit risk.

7. DocuSign was a cloud based electronic signature software that allowed users to digitally send, sign and manage documents, including business contracts.

**COUNTS 1-9**
**WIRE FRAUD**
**[18 U.S.C. § 1343 and § 2]**

8. The factual allegations contained in paragraphs one through seven of this Indictment are realleged and incorporated herein.

9. From on or about October 28, 2021, through on or about September 23, 2022, DEFENDANT PALI, intended to devise and did devise a scheme and artifice to defraud ADT, and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, to wit: the defendant, devised a scheme to defraud ADT by creating

fraudulent ADT security system accounts to earn hundreds of thousands of dollars in sale commissions.

### Manner and Means

10. It was part of the scheme that DEFENDANT PALI, as the owner and operating manager of DCS, gained access to victim customers' identifying information without the customers' knowledge and then used this information to create fraudulent ADT security system accounts.

11. It was further part of the scheme that DEFENDANT PALI created unique false emails in the victim customers' names to avoid ADT's multi-email report and flag system. Each email contained the name of the customer, followed by 3 to 4 number variations, such as Janedoe3472@outlook.com.

12. It was further part of the scheme that DEFENDANT PALI was paying the initial subscription fees using a virtual credit card to conceal his identity and make it appear that the customer named on the ADT contract was paying the subscription fees.

13. It was further part of the scheme that DEFENDANT PALI and DCS did not install separate control panels but rather sent signals to ADT using the same control panel from a single location in the Columbus, Ohio region.

14. To further the scheme and conceal the fraud, DEFENDANT PALI created false ADT customer contracts using the victim customer's identity and electronically signing the contract in in the customer's name using DocuSign. The fraudulent DocuSign signatures were linked to DEFENDANT PALI'S cell phone number.

15. It was further part of the scheme that DEFENDANT PALI sent fraudulent DocuSign documents and/or ADT security panel signals through the internet using a Columbus, Ohio based IP Address.

### *Execution of the Scheme*

16. On or about each of the dates set forth below, in the Southern District of Ohio and elsewhere, DEFENDANT PALI, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below for each count, each transmission constituting a separate count as follows:

| COUNT | APPROXIMATE DATE | WIRE TRANSACTION |
|---|---|---|
| 1 | January 14, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer A.C. |
| 2 | January 14, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer R.C. |
| 3 | January 14, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer G.K. |
| 4 | January 15, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer D.C. |
| 5 | January 15, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer R.H. |
| 6 | January 15, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer J.H. |
| 7 | January 15, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer T.S. |
| 8 | February 22, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer H.M |
| 9 | March 10, 2022 | Wire communication sent in interstate commerce relating to a DocuSign document and/or ADT security panel signals for purported customer J.C. |

All in violation of 18 U.S.C. § 1343 and § 2.

## COUNT 10
### CONSPIRACY TO COMMIT WIRE FRAUD
### [18 U.S.C. § 1349]

17. Paragraphs 1 through 7 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

18. From on or about June 27, 2022, through on or about September 24, 2022, in the Southern District of Ohio and elsewhere, the DEFENDANTS PALI and BENEVENUTO, did knowingly and willfully combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to violate 18 U.S.C. § 1343, that is, acting with intent to defraud, to knowingly and willfully devise, execute, and participate in a scheme and artifice to defraud ADT, and to obtain money and property, by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing the scheme and artifice, using wire communications in interstate commerce. The defendants conspired in a wire fraud scheme to defraud ADT by creating fraudulent ADT security system accounts.

### *Purpose of the Conspiracy*

19. It was the purpose of the conspiracy for DEFENDANTS PALI and BENEVENUTO to perpetuate a wire fraud scheme by creating fraudulent ADT security system accounts through AlarmGaurd to obtain large sale commissions and financially enrich themselves.

### *Manner and Means of the Conspiracy*

20. It was part of the conspiracy that DEFENDANTS PALI and BENEVENUTO gained access to victim customers' identifying information without the customers' knowledge and then used this information to create fraudulent ADT security system accounts through AlarmGuard.

21. It was further part of the conspiracy that DEFENDANTS PALI and BENEVENUTO created unique false emails in the victim customers' names to avoid ADT's multi-email report and flag system. Each email contained the name of the customer, followed by 3 to 4 number variations, such as Janedoe3472@outlook.com.

22. It was further part of the conspiracy that DEFENDANTS PALI and BENEVENUTO were paying the initial subscription fees using a virtual credit card to conceal their identity and make it appear that the customer named on the ADT contract was paying the subscription fees.

23. It was further part of the conspiracy that DEFENDANTS PALI and BENEVENUTO did not install separate control panels but rather sent signals to ADT through the same control panel.

24. To further the conspiracy and conceal the fraud, DEFENDANTS PALI and BENEVENUTO created false ADT customer contracts using the victim customer's identity and electronically signing the contract in the customer's name using DocuSign. The fraudulent DocuSign signatures were linked to DEFENDANTS PALI and BENEVENUTO's cell phone numbers.

25. It was further part of the scheme that DEFENDANTS PALI and BENEVENUTO sent, or caused to be sent, the fraudulent DocuSign documents and ADT security panel signals through the internet.

26. It was further part of the conspiracy that DEFENDANT BENEVENUTO used Zelle, a digital payment system for sending and receiving money directly between bank accounts, to transfer money obtained from the fraud scheme to DEFENDANT PALI'S bank account.

**All in violation of 18 U.S.C. § 1349.**

A TRUE BILL.

_s/Foreperson_
FOREPERSON

DOMINICK S. GERACE, II
UNITED STATES ATTORNEY

_s/Kenneth Affeldt_
KENNETH AFFELDT (0052128)
NICOLE PAKIZ (0096242)
Assistant United States Attorneys